**ORDERED ACCORDINGLY.**

Dated: December 15, 2010

_____
**GEORGE B. NIELSEN, JR**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| LEONARD EDGAR RICHARDSON, | ) Case No. 2:09-19496-GBN |
| | ) |
| Debtor. | ) |
| ─────────────────────────── | ) |
| | ) |
| DAVID BIRDSELL, Trustee, | ) Adversary No. 2:09-ap-01509 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) FINDINGS OF FACT; |
| | ) CONCLUSIONS OF LAW |
| LEONARD EDGAR RICHARDSON, | ) AND ORDER |
| | ) |
| Defendant. | ) |
| ─────────────────────────── | ) |

The plaintiff trustee's complaint, seeking to deny debtor a Chapter 7 discharge was heard as a bench trial before the court on July 16 and September 2, 2010. The matter was thereafter submitted for decision. An interim order was entered on December 2, 2010, announcing the court's decision.

The court has considered the testimony of witnesses, admitted exhibits and the facts and circumstances of this case. The following findings and conclusions are now entered:

Findings of Fact

1. On August 13, 2009, Leonard Edgar Richardson ("debtor") filed a Chapter 7 bankruptcy case in the District of

Arizona with the assistance of legal counsel. Shortly thereafter, David Birdsell ("trustee") was appointed the Chapter 7 trustee. At the September 16, 2009 first meeting of creditors, trustee examined debtor's schedules and statements, after being informed by debtor that these papers were complete and accurate. Debtor's former wife, Julie S. Richardson, was present at the meeting. Following the creditors' meeting, Ms. Richardson, who was unhappy with debtor and his bankruptcy filing, made two visits to the trustee's office, providing photographs and information suggesting debtor was not truthful in his schedules and statements. Her information was that debtor had not fully disclosed all his assets. Testimony of David Birdsell ("Birdsell test."), Admitted exhibit ("ex.") 4.

2. Following Ms. Richardson's last visit, the trustee and his office assistant on November 13, 2009[1], traveled to debtor's home for an unannounced visit. Plaintiff observed large items in debtor's open garage which were not scheduled in the bankruptcy, including a motorcycle, a riding lawn mower, an all-terrain vehicle ("ATV"), a child's battery driven car, tools, a drill press and a pontoon boat. Photographs were taken. Debtor appeared and stated that some of the property was purchased by and was being held for a neighbor. He produced a purchase contract, a journal and titles to the boat, motorcycle and ATV. Debtor asked the trustee to contact neighbor Wesley Steinbrecker to verify ownership of some of the property. The trustee did not do

---

[1]The trustee's testimony is that his visit occurred on November 13. His complaint lists the visit as November 14, the same date as the filing of the adversary complaint. *c.f.*, Birdsell test. and Ex. 1 at p.2.

Case 2:09-ap-01509-GBN    Doc 28   Filed 12/15/10   Entered 12/16/10 13:08:56    Desc
Main Document    Page 2 of 12

so. The trustee does not know how long items were stored in the garage or whether they were located there when debtor filed bankruptcy. The trustee agrees it is logical to park a motorcycle with leather accessories in a garage on a rainy day. The fact finder considers Mr. Birdsell to be a credible witness. Birdsell test., Ex. 1 at p.1, ¶2, Exs.2-3.

3. The trustee believed the pontoon boat was an unreported asset owned by debtor, although it was titled in Steinbrecker's name. The motorcycle and ATV were titled in debtor's name. To the extent property actually belonged to the neighbor, trustee concluded debtor should have reported the items as property held for another in the relevant portion of his statement of financial affairs or schedules. The problem, from the trustee's perspective, is a large category of significant, valuable assets that were neither reported as debtor's property nor as property held for another. *See, e.g.,* Official Form 7 at ¶14 (property owned by another person that debtor holds or controls). The trustee returned to his office and shortly thereafter filed the instant adversary complaint, seeking *inter alia* to deny debtor's bankruptcy discharge. Birdsell test.

4. Following nine years of marriage, debtor and Ms. Richardson divorced. Debtor kept a well-appointed shop in the home's garage with many items and tools that he would buy and sell. As the divorce progressed, she noticed that items would disappear. There was a locked outside shed to which she had no access. To create an inventory and record for property division, she began taking photographs of equipment and tools. Angered by debtor's filing bankruptcy to avoid paying a $30,000 loan made by

her father, she provided the photographs to the trustee. All photographs taken by the former spouse are at least four years old. In her opinion, debtor's divorce valuation of $2,500 for his tools is improper. She estimates their worth at $15,000. Debtor had an extensive collection of tools and equipment, as he must provide his own tools at his work and also had a side job of repairing property for others. During debtor's marriage, Steinbrecker would rarely park his vehicles in debtor's garage. She has observed debtor riding the motorcycle he claims to have sold to Steinbrecker, but not in the last three months preceding her testimony. She has personally observed both the motorcycle and the ATV parked in debtor's garage following the alleged sale. The battery powered toy car was a 2009 Christmas gift to the couple's child. The pontoon boat did not appear until after the divorce. She has no information on any sales of large assets. The fact finder considers Ms. Richardson to be a credible witness, although she holds a clear bias against debtor. Testimony of Julie S. Richardson ("Ms. Richardson test."), Exs.4, 6.

5. Debtor testified he traded the motorcycle and ATV to his neighbor in exchange for a 1995 Dodge truck, believed to be worth $3,500. He produced a December 3, 2008-bill of sale for both vehicles. This was done to obtain a vehicle suitable to transport his child, under a custody agreement. However, the title is still in debtor's name for both vehicles as of May 26, 2010, because the Motor Vehicle Division ("MVD") has not been informed of the sale. Debtor's divorce papers, dated December 4, 2008 and filed through counsel, list the vehicles as still belonging to him, but indicate he intends to sell the ATV. No

intention to dispose of the motorcycle is expressed in this court document. He concedes that since he already had traded away the motorcycle and ATV, he would have been in difficulty if the divorce court had ultimately refused his request to be awarded both vehicles. Asked to explain why both vehicles are still in his name, instead of his neighbor/purchaser, debtor commented "That's up to Wes [2]." The fact finder does not consider this to be credible testimony. Testimony ("test.") of Leonard Edgar Richardson, Ex. 6 at pgs 4, 6; Ex. 7 at p.7, Exs. 8, 9, 11.

6. Prior to early June of 2010, when debtor moved from the neighborhood, his next door neighbor and friend Wesley Steinbrecker, would park vehicles, including the motorcycle and ATV acquired from debtor, in debtor's driveway or garage. Since debtor no longer owns either vehicle, he didn't feel obligated to clarify the ownership in his bankruptcy schedules. At the time of his first meeting of creditors, debtor told the trustee his bankruptcy schedules were true and accurate, even though he didn't originally list his tools. The tools were important enough to be fought over in the divorce, but were not originally disclosed in the bankruptcy case. They were subsequently listed in an amended bankruptcy schedule and valued at $1,000. There are unreported antique tools as well. Richardson traded the motorcycle to Steinbrecker, but it continued to be parked in his garage. Debtor denies he continued to ride it. Nor did he change the MVD title,

---

[2]This was his direct testimony. On cross examination, debtor testified he did make attempts to change the titles through a bank notary in early July, 2009 and chose to document his attempts in a personal journal. He has no explanation why Steinbrecker did not file the notarized transfer documents debtor provided. Richardson test. Ex. B.

report the sale or change the license plate, as he feels that is the purchaser's responsibility. Although the motorcycle and ATV were listed as sold for $3,500 in the December 3, 2008 purchase order, the Dodge truck debtor received in exchange is valued at $1,500 in his August 13, 2009 bankruptcy schedules. He has no knowledge of the basis for this valuation. He acknowledges that he did sign the schedules. Although required to list all transfers of property within two years of filing bankruptcy, debtor failed to list the vehicle trade in his bankruptcy Statement of Financial Affairs. His excuse is his belief the transfer disclosure requirement concerned real estate only. Although his Statement of Financial Affairs has a section for disclosing property held for another, debtor did not disclose the Steinbrecker vehicles in his possession. Debtor did not ask his attorney for guidance regarding the non disclosures. The fact finder does not find this testimony credible. Richardson test. Ex. 8, Ex. 2 at sheet 2 of bankruptcy schedule B; Ex. 2 at Statement of Financial Affairs, items 10 and 14.

7. Wesley Steinbrecker, a friend and former next door neighbor of debtor, is a licensed vehicle dealer with a Tucson business. He sells or purchases five to ten vehicles a month and stores some in his Mesa residence or on debtor's driveway or garage. He has also stored two of his boats in his neighbor's backyard after debtor's divorce. Since debtor moved from the neighborhood, Steinbrecker no longer parks his vehicles next door. He has possession of both the motorcycle and ATV, through a trade. He holds an unfiled notarized title for each. He maintains that as a licensed dealer, he doesn't have to possess a title to either

in his own name, even though he rides the motorcycle personally and uses the ATV to entertain his seven year-old son. Steinbrecker traded his 1995 Dodge truck for debtor's two vehicles on an unknown date, which allowed debtor to have an enclosed street vehicle to transport his daughter. Testimony ("test.") of Wesley Steinbrecker.

        8. Steinbrecker took possession of the motorcycle over a year ago, but has left it overnight at debtor's home a dozen or more times. A license plate issued to debtor is still on the motorcycle. He maintains it is debtor's responsibility to remove his plate from the vehicle. Steinbrecker concedes he is probably violating the law when he rides the motorcycle using debtor's license plate. He concedes MVD still thinks debtor holds the title. It was pure chance that the motorcycle he owns, but is still titled to debtor with debtor's plate on it, was parked in debtor's garage when the trustee appeared. It had been there for a day or two. His boat was also stored in debtor's backyard when it was photographed by the trustee. When parked in the garage, the motorcycle keys are left with debtor, theoretically allowing him to ride it. If debtor wasn't home, the witness would still probably leave the keys with the motorcycle in debtor's garage. Although debtor allowed Steinbrecker to park his vehicles and boats free at his residence, Steinbrecker did not give debtor the truck or allow him free use of it. He did not use debtor's property for parking when debtor's wife resided there.

        The ATV is used to ride off road. No license plate is on the vehicle and it is uninsured. The witness does not see a need to title the ATV in his own name, even though it is for his

personal use.  The motorcycle is also used personally by the witness.  It is driven on the street using debtor's license plate.  The witness sees no need to change the title to himself, even though he was once stopped and ticketed for an improper license plate.  Although it is not advertised for sale, it is insured through his business as sale inventory.  The fact finder does not find the witness' characterization of the transaction with the debtor to be credible.  Steinbrecker test.

9. To the extent any of the following conclusions of law should instead be considered findings of fact, they are hereby incorporated by reference.

### Conclusions of Law

1. To the extent any of the above findings of fact should instead be considered conclusions of law, they are hereby incorporated by reference.

2. Pursuant to 28 U.S.C. §1334(a), jurisdiction of bankruptcy cases is vested in the United States District Court for the District of Arizona.  That court has referred under 28 U.S.C. §157(a), all cases under Title 11 of the United States Code and all adversary proceedings arising under Title 11 or related to a bankruptcy case to this court.  Amended General Order of May 20, 1985.  This adversary having been appropriately referred, this court has jurisdiction to enter a final order and judgment determining debtor's right to a discharge.  28 U.S.C. §157 (b)(2)(J).  No party has argued to the contrary.  Accordingly, the court will enter a final judgment in this proceeding.

3. Conclusions of law are reviewed *de novo*. Findings of fact are reviewed for clear error. *American Law Center v. Stanley*

- 8 -
Case 2:09-ap-01509-GBN   Doc 28   Filed 12/15/10   Entered 12/16/10 13:08:56   Desc
Main Document    Page 8 of 12

*(In re Jastrem),* 253 F.3d 438, 441 (9th Cir. 2001). Denial of discharge is a harsh result. Courts should construe 11 U.S.C. §727 liberally in favor of debtors and strictly against parties objecting to discharge. *Murphey v. Crater (In re Crater),* 286 B.R. 756, 759 (Bankr. Az. 2002). The burden of proof on an objection to discharge under §727(a)(2) is the preponderance of the evidence. *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010).

    4. Under 11 U.S.C. §727(a)(2)(A), a discharge may be denied if it is demonstrated that debtor, with intent to hinder, delay or defraud a creditor or officer of the estate, has transferred, removed or concealed property of the debtor within one year before the date of the bankruptcy. A party seeking denial of discharge under §727(a)(2) must prove two things: (1) a disposition of property, such as transfer or concealment and (2) a subjective intent to hinder, delay or defraud a creditor through the act. *In re Retz,* 606 F.3d at 1200. Debtor's intent need not be fraudulent to meet the requirements of §727(a)(2). Because the statute's language is in the disjunctive, it is sufficient if debtor's intent is to hinder or delay a creditor. *Id.* Lack of injury to creditors is irrelevant in denying a bankruptcy discharge. Intent may be inferred from surrounding circumstances. *Emmett Valley Associates v. Woodfield (In re Woodfield),* 978 F.2d 516, 518 (9th Cir. 1992)(citing *In re Adeeb,* 787 F.2d 1339, 1342-43(9th Cir. 1986)). The surrounding circumstances include various "badges of fraud" that constitute circumstantial evidence of intent. *Id.* A course of conduct may also be probative of the question of intent. *Wolkowitz v. Beverly (In re Beverly),* 374 B.R.

221, 243 (Bankr. 9th Cir. 2007) *aff'm in part and appeal dismissed in part* 551 F.3d 1092 (9th Cir. 2008). The mere intent to hinder, delay or defraud a creditor is all that is needed to deny discharge under §727(a)(2)(A) and is a question of fact. *Beverly* at 243, *Crater* at 760. The court finds such intent in this case, given the course of conduct of non reporting or under reporting of major assets. The court finds and concludes that plaintiff has met that burden through the credible evidence presented and debtor's failure to rebut the case by credible evidence. *See* findings of fact 2, 4-8.

     5. To prevail on a §727(a)(4) claim, plaintiff must show by a preponderance of the evidence, that (1) debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly and (4) fraudulently. A finding of fraudulent intent is a finding of fact reviewed for clear error. *In re Retz,* 606 F.3d at 1197. Section 727(a)(4)(A) requires that the relevant false oath relate to a material fact. A fact is material if it bears on debtor's business transactions, estate or concern discovery of assets, business dealings or the existence and disposition of debtor's property. An Omission or misstatement that detrimentally affects estate administration is material. The third required element is that debtor act knowingly in making the false oath. Debtor acts knowingly when acting deliberately and consciously. *Id.* To demonstrate fraudulent intent, plaintiff must show (1) debtor made the false statement or omission in bankruptcy schedules; (2) at the time knowing they were false and (3) made them with the intention of deceiving creditors. Intent is usually proven by

- 10 -
Case 2:09-ap-01509-GBN    Doc 28    Filed 12/15/10    Entered 12/16/10 13:08:56    Desc
Main Document    Page 10 of 12

1 circumstantial evidence or by inferences drawn from debtor's
2 conduct. Reckless indifference or disregard for the truth may be
3 circumstantial evidence of intent, but is alone insufficient to
4 constitute fraudulent intent. *Id.* at 1198-99. A false statement is
5 material if bears a relationship to the debtor's business
6 transactions or estate, or concerns the discovery of assets,
7 business dealings or the existence and disposition of debtor's
8 property. It can be material, even if it does not cause direct
9 financial prejudice to creditors. *Fogal Legware of Switzerland,*
10 *Inc. v. Wills (In re Wills),* 243 B.R. 58, 62-63 (9th Cir.
11 1999)(citing cases). The court concludes and finds that debtor's
12 sworn statements and failure to schedule assets and transactions
13 were materially false omissions, knowingly and fraudulently made.
14 *See* findings of fact, *Id.*

15       6. The court concludes that debtor should not receive a
16 discharge in this case.

Order

18     IT IS ORDERED that the court will find for plaintiff and
19 against defendant. Plaintiff's complaint will be sustained and
20 debtor will be denied a discharge. The court will subsequently
21 issue a judgment.

22                         ORDERED ACCORDINGLY.

25 ///
26 ///
27 ///

| | |
|---|---|
| 1 | Copies emailed this 15th day of December, 2010, to: |
| 2 | |
| 3 | Terry A. Dake<br>TERRY A. DAKE, LTD.<br>11811 N. Tatum Blvd., #3031 |
| 4 | Phoenix, AZ 85028-1621<br>Email: tdake@cox.net |
| 5 | Attorney for Plaintiff |
| 6 | Lawrence "D" Pew<br>PEW LAW CENTER, PLLC |
| 7 | 1811 S. Alma School Road<br>Suite 260 |
| 8 | Mesa, AZ 85210<br>Email: ldpew@pewlaw.com |
| 9 | Attorney for Defendant |
| 10 | By:/s/Rachael M. Stapleton<br>        Judicial Assistant |